**Frank W. LUCZYNSKI, Appellant,**

v.

**G. W. SEVIER, Appellee.**

**No. 15234.**

Court of Civil Appeals of Texas.

Dallas.

April 26, 1957.

Rehearing Denied May 24, 1957.

Robert G. Vial, Dallas, for appellant.

Stanford & Allen, Dallas, for appellee.

CRAMER, Justice.

Prior to the institution of this suit George W. Sevier posted notices of a trustee's sale under a deed of trust for a foreclosure of the property here involved. Before the sale, this suit was instituted by the Luczynskis for rescission, temporary injunction, and other relief on final hearing, alleging fraud of Sevier as seller of a house and lot in Dallas County. Several other parties were named and cross-actions filed against the Luczynskis and other parties not now involved on this appeal. The Luczynskis sought and obtained from the court its temporary injunction pendente lite against the active defendants, Worcester and Sevier, enjoining them from foreclosure of either of their alleged liens, providing the Luczynskis paid the sum of $56 per month into the registry of the court. Thereafter trial by jury was had on the merits and at the conclusion of the evidence, after motion for instructed verdict

was sustained and the cause withdrawn from the jury, the court first rendered judgment in favor of Sevier that plaintiff Luczynskis take nothing by their suit, that their injunction be dissolved, and the defendant Sevier recover judgment from the Luczynskis on his cross-action for the sum of $1,776.79, together with foreclosure and order of sale. Defendant Worcester recovered judgment on its cross-action for the sum of $392, deposited by the Luczynskis in the registry of the court, which is not here complained of.

Thereafter both the Luczynskis and Sevier made motions to reform the judgment and on June 25, 1956, the trial court entered a new substitute judgment reciting that at conclusion of the evidence on motion of Sevier the court withdrew the case from the jury and entered judgment that the Luczynskis take nothing and that Sevier have judgment for his debt, foreclosure, etc., and that the amounts in the registry of the court be turned over to Sevier as a credit on his debt.

After the Luczynskis' motion for new trial was overruled, Frank W. Luczynski duly perfected this appeal against G. W. Sevier, briefing six points of error. Point 1 asserts error in rendering judgment for Sevier on his cross-action when the note and deed of trust were in evidence for the limited purpose of showing they were blank instruments when signed by the Luczynskis.

When the note and deed of trust (Exhibits 4 and 5) were offered in evidence the following took place:

"Mr. Vial: If the Court please, plaintiff will offer plaintiff's Exhibits 4 and 5 for the limited purpose of identifying, they being the piece of paper signed in blank by this plaintiff. We offer them for that limited purpose.

"Mr. Stanford: We will withdraw any objection we had, Your Honor. They should be in evidence. We were going to introduce them ourselves. If the Court will allow them in, we have no objection.

"The Court: All right."

■ The only question raised by the point is whether or not such note so offered and admitted could be considered as in evidence for all purposes in entering final judgment in this cause. We are of the opinion that it could. 41–B Tex.Jur., p. 150, states:

"A document introduced for one purpose by one party need not be again introduced by the opposing party for another purpose in his favor." Citing cases. Point 1 is overruled.

Point 2 asserts error in rendering judgment for Sevier on his cross-action based on a promissory note when there was no evidence that Sevier at the time of the trial made presentment, demand for payment, protest for nonpayment, or due notice after payment was refused; or that the unpaid balance at time of the trial was $1,776.79, or that Sevier placed the note in the hands of an attorney for collection, or that he agreed with an attorney to pay an attorney's fee in the amount set forth in the note, or that the Luczynskis were entitled to credits on principal and interest in a sum certain.

The note involved in this appeal is a second lien monthly payment note executed by the Luczynskis themselves, dated November 20, 1954, in the amount of $1,750, payable to G. W. Sevier in monthly installments of $40 each, including interest, first payment due on December 1, 1954, and a like payment due thereafter on the first day of each succeeding month. This second lien note and the deed of trust securing it provided that failure to pay any installment when due shall, at the election of the holder, mature the whole amount of said note. No specific place of payment is named in the note.

■■ It is true that Art. 5937, sec. 70, Vernon's Ann.Civ.St., provides that pre-

sentment for payment is not necessary in order to charge the person principally liable on a negotiable promissory note. But our Supreme Court, in the case of Faulk v. Futch, 147 Tex. 253, 214 S.W.2d 614, 5 A.L.R.2d 963, in construing said section along with section 74 of the same statute, has held that a holder of a note cannot exercise his option under an acceleration clause to declare the whole amount due on the maker's failure to pay any installment, if no specific place of payment is expressed in the note, until it is presented to the payor. Under such circumstances Art. 5937, sec. 74, is applicable. Presentment is necessary. We sustain appellant's point No. 2.

Point 3 asserts error in that on motion at the end of appellant's evidence the court withdrew the whole case from the jury and summarily entered judgment for appellee and there were material issues of fact for the jury on Sevier's cross-action as to whether or not (a) the note and deed of trust purportedly held by Sevier were altered after the Luczynskis executed them; (b) the instruments were in fact lawfully acknowledged before a notary public; and (c) the altered instruments correctly reflected a meeting of the minds of the parties.

On subdivision (a) the record shows Luczynski testified:

"Q. Did you contact Sevier any more? A. Yes, sir, I kept after Sevier, oh, several times and I wanted to see the second lien note that I signed or a trustee's deed.

"Q. What did he say in regard to the second lien note? A. Oh, he said, 'I signed a lot of things.' That is all there was to that. Then I stopped payment and that was the only way I could force a second lien note out into the open.

"Q. Just like here in Court today, he wouldn't show you what you signed in blank? A. That's right.

"Q. Wouldn't put it of record down in the County Clerk's Office? A. It is not of record.

"The Court: Did you sign the second lien note in blank or was the note filled out when you signed it? A. All the papers that were signed were signed in blank, Your Honor.

"The Court: You mean the second lien note? A. Everything signed in blank.

"The Court: Everything was signed in blank? A. Yes, sir. It was supposed to be a bunch of papers to be signed, and to expedite the handling of the papers due to my health condition, with the title company, and everything was signed in blank.

"The Court: Where were you when you signed the note that you say you signed in blank? A. At Mr. Sevier's office.

"The Court: When did you find out what the note contained? A. In court at the injunction.

"The Court: I thought you said you had paid on the second lien note. A. Well, we kept paying because the contract showed it, but I had never seen the note, Your Honor. Now we were already trapped then, we had our money in, and it was the easiest way out for us to continue paying until we were able to do something about it.

"The Court: I see this note says that it is payable in monthly installments of $40; was that in accordance with the discussion you had with Mr. Sevier before the note was filled out? A. No, sir, we didn't have any definite discussion on how it was to be paid. That was to be taken care of at the Title Company.

"The Court: You mean to say that neither the title company nor Mr. Sevier told you how much the second

lien installments were? A. It never reached the title company; it never went through the title company. Mr. Sevier made the deed out and the note out himself, and had them mailed to me, and had the deed and the contract mailed to me, and the note we haven't seen—couldn't find any record of it in the Court. After we came up with the injunction suit several months back—

"The Court: You mean the deed of trust behind the second lien note was not put on record? A. No, sir, it has never been put on record, up to the time we had the injunction suit.

"The Court: All right, go ahead.

"Q. (By Mr. Vial) All right, you were unable to buy the title policy and unable to get a correction deed which the title company had suggested to you; what did Sevier tell you then after you were at that stage? A. I told him I stopped—I would stop payment until I got a title policy—he said he could get it for me, and he said he would get it for me, at this stage.

"Q. Of course, in the contract that he later filled in, he agreed to give you a warranty deed himself for the property? A. He agreed to give me the warranty deed, not Jackson.

"Q. Has he ever to this day given you a warranty deed of any kind or character to your home? A. No, sir.

"Q. And in his contract of sale he agreed to give you a title policy? A. Yes, sir.

"Q. And he agreed that the issuance of a title policy by a title company would be conclusive evidence of the marketability of your title to your home, didn't he? A. Yes, sir.

"Q. Has he ever to this living day ever given you a title policy to your home? A. No, sir. With the excep-

tion of that Jackson policy which he mailed me which is no account to me.

"Q. And according to Mr. Sevier's method of doing business, that is your protection? A. Yes, sir, that was his idea of my protection."

In contradiction of the above testimony appellee Sevier testified that the papers in question were not signed in blank by the Luczynskis, but were filled out when signed. Thus the record shows on its face the two witnesses are in conflict on the issues involved in subdivisions (a) and (c) of appellant's point 3. The evidence raises questions of fact on such issues. As to subdivision (b), though the record raises a question of fact as to whether the acknowledgment of Mrs. Luczynski was properly taken by the notary public, we do not believe that the question is material in this case since the note in question was part of the purchase price by the Luczynskis. Sevier was therefore the holder of superior title under a vendor's lien and could assert his superior title even if Mrs. Luczynski did not sign or acknowledge the instrument in question. Humble Oil & Refining Co. v. Downey, 143 Tex. 171, 183 S.W.2d 426; Hall v. Dallas Joint-Stock, etc., Tex.Civ.App., 95 S.W.2d 200 (error ref.); Farmers & Merchants Nat. Bank v. Arrington, Tex.Civ. App., 98 S.W.2d 378; and Jenkins v. Conn, Tex.Civ.App., 256 S.W.2d 221. However subdivisions (a) and (c) do present material fact questions, so we must sustain appellant's point 3.

Point 4 asserts error in entering summary judgment that the Luczynskis recover nothing from Sevier because the evidence showed that they, due to Sevier's fraud, paid more for the property than they agreed to pay. Appellee counters that the evidence shows the amount of the first lien note was set out as an approximate figure of $7,250 and appellant learned shortly after moving into the property that the lien was in a sum slightly in ex-

cess of $7,250, but ratified such discrepancy, (a) by thereafter making eight payments thereon, and (b) the contract provided that appellant pay the $25 closing cost and that the $25 was paid and no further sum was demanded of appellant. Also that appellee paid $15 as a transfer fee to the first lien holder and a portion of the recording fees.

Without going into detail we are of the opinion that under the record there were disputed issues of fact for the jury on the question of ratification and that the instructed verdict and judgment thereon were not proper. Point 4 is sustained.

■ Point 5 asserts error in summarily entering judgment that the Luczynskis recover nothing when the undisputed evidence showed the Luczynskis never received a title policy or warranty deed from Sevier conveying the lot contracted for and which were to be furnished by Sevier and that the policy was made conclusive of their title.

Appellee counters that appellant is attacking his own title which has not been questioned; that the contract provisions of title policy are scratched out and "warranty deed" is substituted in place thereof; and that no title company is named therein since such name was "scratched out".

The paragraph in question is shown in the contract as follows:

"Seller agrees to furnish a ~~Warranty Deed.~~ ~~Company~~ on said property, which shall be conveyed by General Warranty deed by Seller, free and clear of any and all encumbrances, except those herein named. The willingness of said ~~Company~~ to issue a policy of title insurance shall be conclusive of the marketability of title."

Under such record the contract provided for only a warranty deed. However, Luczynski under the record here did not receive a warranty deed from Sevier, but received a warranty deed from Lynn O. Jackson et ux., and further did not receive a title policy from Sevier, but received a title policy issued to Lynn O. Jackson et ux., dated November 30, 1951. Such record did not justify or support a summary judgment for Sevier against Luczynski. Point 5 is sustained.

Point 6 asserts error in entering summary judgment since the evidence raised material issues of fraud on the part of Sevier, reliance thereon by, and resulting damage to the Luczynskis. From what we have said under other points and the record here, we, without further writing thereon, sustain point 6.

For the reasons stated, the judgment of the trial court is reversed and the cause is remanded to that court for a new trial.

Reversed and remanded.